UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEXANDRA HERNANDEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MIDPEN HOUSING CORP.,<br><br>　　　　Defendant. | Case No. 13-cv-05983 NC<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 8 |

Defendant in this employment discrimination action moves to dismiss the complaint in its entirety for failure to state a claim. Because the Court finds that plaintiff has alleged detailed facts supporting a plausible claim for race discrimination, retaliation, violation of the FMLA and CFRA, failure to prevent discrimination, and wrongful termination, the Court denies the motion.

**BACKGROUND**

**A.　Procedural Background**

Plaintiff filed her complaint on December 30, 2013, alleging claims for race and national origin discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and the Fair Employment and Housing Act ("FEHA"); retaliation in violation of Title VII

and FEHA; violation of the Family Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA"); failure to prevent discrimination in violation of FEHA; and wrongful termination and wrongful constructive termination. Dkt. No. 1. Defendant moved to dismiss the complaint for failure to state a claim on January 24, 2014. Dkt. No. 8. The Court found the motion suitable for disposition without oral argument. Dkt. No. 14. Both parties have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 6, 12.

**B.     Factual Background**

Alexandra Hernandez began working for defendant MidPen Housing Corporation in October 2010. Dkt. No. 1 at ¶ 11. Plaintiff was initially employed as Regional Property Manager and in September 2012 was promoted to Director of Property Operations Region 1. *Id.* at ¶¶ 11, 16, 18. Plaintiff alleges that for approximately the first two years of her employment, defendant "had communicated to Plaintiff that Plaintiff's performance was meeting or exceeding Defendant's expectations . . . ." *Id.* at ¶ 19.

In July 2012, Debra Sobeck became the new Vice President of Property Management and plaintiff began reporting directly to Sobeck. *Id.* at ¶¶ 17, 18. Plaintiff alleges that Sobeck "commenced an on-going pattern of mistreating Plaintiff" including by "gradually stripp[ing] Plaintiff of a significant amount of responsibility . . . ." *Id.* at ¶¶ 20, 21. Plaintiff alleges that Sobeck mistreated plaintiff because plaintiff is Russian. *Id.* at ¶22-24, 29, 82, 89.

In support of that claim, plaintiff alleges that Sobeck "made it clear to Plaintiff" that she did not like anything about plaintiff or another Russian employee, "including the way they spoke." *Id.* at ¶ 22. Plaintiff also alleges that Sobeck prohibited plaintiff from promoting a Russian employee because plaintiff and the other employee were both Russian and therefore promoting her would send the "wrong message to the company." *Id.* at ¶ 24. Plaintiff also alleges that Sobeck denied a raise, without any legitimate reason, that plaintiff wanted to award to another Russian employee. *Id.* at ¶ 27. Plaintiff alleges that Sobeck "indicated that she believed Russian people are opinionated and outspoken and Ms. Sobeck did not like that." *Id.* at ¶ 30. Finally, plaintiff alleges that Sobeck told plaintiff she looked

"awfully white" and that Sobeck wanted to hire more black employees to increase diversity. *Id.* at ¶ 28.

Plaintiff alleges that she complained on multiple occasions regarding Sobeck's discrimination. Plaintiff alleges that she complained to Laurie Santos-Reguera, Human Resources Manager, and to Rick Chapura, Vice President of Human Resources, that Sobeck "was discriminating against Ms. Astvatsaturian by not allowing for [her] promotion . . . and the sole basis for Ms. Sobeck prohibiting the promotion was because Plaintiff and Ms. Astvatsaturian are Russian." *Id.* at ¶ 25. Astvatsaturian was eventually promoted. *Id.* at ¶ 26. Plaintiff also states that she emailed and met with Chapura on multiple occasions "to complain regarding Ms. Sobeck's discriminatory and harassing conduct." *Id.* at ¶¶ 42, 38, 43, 44, 54, 55, 57. Despite her complaints, plaintiff alleges that defendant did nothing to prevent Sobeck's continued discrimination. *Id.* at ¶¶ 30, 56, 140.

Plaintiff also alleges that Sobeck and defendant retaliated against her for complaining about Sobeck's discrimination. Plaintiff alleges that Sobeck "had gone so far as to request of Mr. Chapura and the President of Defendant, Matthew O. Franklin, that Defendant fire Plaintiff, in response to which Mr. Franklin and Mr. Chapura advised Ms. Sobeck that Defendant could not fire Plaintiff because Plaintiff's performance was and always had been very good." *Id.* at ¶ 46. Plaintiff also alleges that Sobeck issued a "development action plan in which Ms. Sobeck falsely accuses Plaintiff of not meeting Defendant's expectations." *Id.* at ¶ 49. As evidence that the development action plan contained falsehoods, plaintiff points to an email that Sobeck sent approximately one week after issuing the development action plan, in which Sobeck recommends plaintiff for a job, noting that "[i]t's not often that a candidate of (Plaintiff's) caliber is available." *Id.* at ¶ 51-52.

On September 6, 2013, plaintiff met with Franklin to again complain about Sobeck's discrimination. Franklin "indicated that he was sorry and that Plaintiff could be an exceptional leader in some other organization but that he believed that Plaintiff should leave her employment with Defendant." *Id.* at ¶ 57. On September 17, 2013, plaintiff's doctor

Case No. 13-cv-05983 NC
ORDER DENYING MOTION TO
DISMISS

3

issued a work status report in which he indicated plaintiff needed to take the following day off of work, and would need to be limited to four hours of work per day, with no heavy lifting at least until October 1, 2013, due to plaintiff's back pain and stress. *Id.* at ¶ 58. On September 19, 2013, defendant delivered to plaintiff a termination letter "setting forth that unless Plaintiff signed a 'Separation Agreement and Release' which was attached to the termination letter, Plaintiff's employment would be terminated effective October 1, 2013 and Plaintiff would be required to vacate her company-provided housing by October 31, 2013." *Id.* at ¶ 60. Plaintiff refused to sign the agreement, and therefore believed she was terminated as of October 1, 2013. *Id.* at ¶¶ 61-64. On November 13, 2013, defendant "once again notified Plaintiff that Plaintiff's employment was terminated. This time, Defendant indicated that Plaintiff's employment was terminated effective November 13, 2013. *Id.* at ¶ 66. The notice indicated that plaintiff had voluntarily resigned. *Id.* at ¶ 67.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

# DISCUSSION

### A.  Title VII and FEHA Race and National Origin Claims

Both FEHA and Title VII prohibit employment discrimination on the basis of specified statuses, including race and national origin. Cal. Gov't Code § 12940(a); 42 U.S.C. § 2000e. "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [its] own statutes." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000).

To state a claim under Title VII or FEHA, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2). *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (holding that allegations that plaintiff was terminated on account of his national origin and age along with details of "the events leading to his termination, [with] relevant dates, and include[ing] the ages and nationalities of at least some of the relevant persons involved with his termination" satisfied requirements of Rule 8(a)). The claim must be "plausible on its face, meaning that the complaint's averments allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).

First, defendant argues that plaintiff has failed to state a plausible claim for race or national origin discrimination because she has not alleged facts showing that defendant exhibited discriminatory intent or motive to treat her differently based on the fact that she is Russian. Dkt. No. 8 at 13. But that argument ignores several factual allegations in the complaint, alleging that supervisory employee Sobeck treated plaintiff poorly because she is Russian. Plaintiff alleges that Sobeck did not like the way Russian people spoke, and that Sobeck "indicated that she believed Russian people are opinionated and outspoken and Ms. Sobeck did not like that." Dkt. No. 1 at ¶¶ 22, 30. Plaintiff also alleges that Sobeck would not allow her to promote a Russian employee because Sobeck thought doing so would

"send the wrong message to the company." *Id.* at ¶ 24.  Plaintiff alleges that Sobeck refused to promote another qualified employee because that employee was Russian. *Id.* at ¶ 27.  These facts are sufficient to allege that Sobeck had a discriminatory motive in her treatment of plaintiff.  *See De Los Santos v. Panda Exp., Inc.*, No. 10-cv-01370 SBA, 2010 WL 4971761, at *8 (N.D. Cal. Dec. 3, 2010) (finding that allegations that manager made racially stereotyping comments were "sufficient to provide Defendants with fair notice of the claims being alleged against them.").

Although defendant argues that these remarks made by Sobeck are "stray," the Court finds the argument premature.  In determining whether a remark is stray, and thus insufficient to create a triable issue of fact, the court considers several contextual factors such as the time between the remark and the discriminatory action, whether the remark was made by a decisionmaker, whether the remark was made regarding the decisionmaking process, and whether the remark was isolated or part of a greater landscape of evidence of discrimination.  *See Reid v. Google, Inc.*, 50 Cal. 4th 512, 545 (2010) ("the only consistency to the federal stray remarks cases is that the probative value of the challenged remark turns on the facts of each case.").  At the pleading stage, the Court is not in a position to evaluate the context of the remarks, nor is that evaluation necessary.  Plaintiff has alleged that Sobeck on several occasions exhibited her intent to discriminate against plaintiff due to her Russian race, and this is sufficient to survive the motion to dismiss.

Next, defendant argues that the complaint should be dismissed because plaintiff has not alleged that an adverse employment action was taken against her because of her race. This too ignores the factual allegations throughout the complaint.  Plaintiff alleges that because of her animosity towards plaintiff based on her Russian race, Sobeck asked that plaintiff be fired, and plaintiff was eventually fired despite her good work performance. Dkt. No. 1 at ¶¶ 46, 60-64.  Additionally, plaintiff alleges that Sobeck issued a development action plan that falsely accused plaintiff of not meeting defendant's expectations. *Id.* at ¶ 49.  These allegations are sufficient to allege that defendant took an adverse employment action against plaintiff based on her race or national origin.  *See Lewis v. United Parcel*

Case No. 13-cv-05983 NC
ORDER DENYING MOTION TO DISMISS
6

*Serv., Inc.*, No. 05-cv-02820 WHA, 2005 WL 2596448, at *2 (N.D. Cal. Oct. 13, 2005), *aff'd*, 252 F. App'x 806 (9th Cir. 2007) ("Under California law, an adverse employment action may be an ultimate employment action such as termination or demotion. It may also be anything else that is reasonably likely to adversely and materially affect an employees's [sic] job performance or opportunity for advancement in his or her career.").

Finally, defendant argues that even if the termination was an adverse employment action, that plaintiff's complaint "infers that Sobeck was not the decision maker and played no role in the eventual termination of her job." Dkt. No. 8 at 14. This argument is unpersuasive. First, the Court notes that even if Sobeck had no influence on plaintiff's ultimate termination, the complaint alleges that Sobeck was responsible for issuing the development action plan, which is an independent adverse employment action. Regardless, the complaint alleges that Sobeck specifically asked that plaintiff be fired, and that request was eventually granted. This is sufficient to allege that Sobeck at least had influence on the decision to fire plaintiff. *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) ( "Even if a manager was not the ultimate decisionmaker, that manager's retaliatory motive may be imputed to the company if the manager was involved in the [adverse employment] decision."). Thus plaintiff has alleged facts sufficient to state a claim that adverse employment actions were taken against her due to discrimination based on race and national origin.

**B.   Title VII and FEHA Retaliation Claims**

To establish a prima facie case of employment discrimination based on retaliation, the "employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two." *Dawson v. Entek Intern*, 630 F.3d 928, 936 (9th Cir. 2011). Here, plaintiff has alleged facts to support a prima facie case that defendant retaliated against her for her complaints of racial discrimination. First, plaintiff alleges that she complained to management on several occasions about Sobeck's racially discriminatory behavior. Dkt. No. 1 at ¶¶ 38, 42, 43, 44, 54, 55, 57. This is sufficient to allege that plaintiff engaged in protected activity. *See*

Case No. 13-cv-05983 NC
ORDER DENYING MOTION TO DISMISS     7

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (plaintiff's "informal complaints" to management about sex discrimination constituted protected activity). Second, as already discussed, plaintiff has alleged that defendant took adverse employment actions against her. Finally, plaintiff alleges that she was terminated within three weeks of her final complaint to management regarding Sobeck's discrimination. Such temporal proximity between her protected activity and an adverse employment action is sufficient to allege a causal link between the two. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) ("The temporal proximity of events was sufficient to satisfy the third element of the prima facie case."). Therefore, plaintiff has sufficiently alleged a claim for retaliation under Title VII and FEHA.

**C.  FMLA and CFRA Medical Leave Claims**

To state a claim for retaliation in violation of FMLA or CFRA, the plaintiff must allege 1) the defendant was an employer covered by FMLA or CFRA; 2) the plaintiff was an employee eligible to take FMLA or CFRA leave; 3) the plaintiff exercised her right to take leave for a qualifying FMLA or CFRA purpose; and 4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to FMLA or CFRA leave. *Hurley v. Pechiney Plastic Packaging, Inc.*, No. 05-cv-05028 JSW, 2006 WL 708656, at *2 (N.D. Cal. Mar. 16, 2006) (citing *Dudley v. Dep't of Transp.*, 90 Cal.App.4th 255, 261 (2001)); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005).

Defendant's only argument as to why plaintiff has not stated a claim for relief is that she did not seek medical leave until "subsequent to learning from MIDPEN President Franklin that her employment with the company was terminated." Dkt. No. at 18. This argument is not supported by the factual allegations in the complaint. Plaintiff's complaint alleges that on September 6, 2013, plaintiff met with Franklin to address her concerns regarding Sobeck's discriminatory behavior. In the meeting, Franklin "indicated that he was sorry and that Plaintiff could be an exceptional leader in some other organization but that he believed that Plaintiff should leave her employment with Defendant." Dkt. No. 1 at

¶ 57. Plaintiff then requested a day of medical leave, as required by her doctor, on September 17, 2013. *Id.* at ¶ 58. Two days later on September 19, 2013, "Defendant delivered to Plaintiff a termination letter setting forth that unless Plaintiff signed a 'Separation Agreement and Release' which was attached to the termination letter, Plaintiff's employment would be terminated effective October 1, 2013 and Plaintiff would be required to vacate her company-provided housing by October 31, 2013." *Id.* at ¶ 60. Thus, the complaint in no way alleges that plaintiff was terminated at the September 6 meeting with Franklin. Instead, the complaint alleges that Franklin pressured plaintiff to leave the company, but that ultimately plaintiff was handed a termination letter two days after she requested medical leave as required by her treating physician. The motion is therefore denied as to plaintiff's CFRA and FMLA claims.

## D.  Failure to Prevent Discrimination Claims

It is an unlawful employment practice under FEHA "for an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring" in the workplace. Cal. Govt. Code § 12940(k). A plaintiff seeking to recover damages based on a claim of failure to prevent discrimination or harassment "must show three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." *Lelaind*, 576 F. Supp. 2d at 1103.

In moving to dismiss plaintiff's failure to prevent discrimination claim, defendant relies solely on the argument that there can be no liability for a failure to prevent discrimination claim where the underlying FEHA discrimination claim is dismissed. *See Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 288-89 (1998). Because the Court finds that plaintiff has alleged a claim for race and national origin discrimination under FEHA, the motion to dismiss is also denied as to her failure to prevent discrimination claims. *See Guitron v. Wells Fargo Bank, N.A.*, No. 10-cv-03461 CW, 2012 WL 2708517 (N.D. Cal. July 6, 2012) (denying motion for summary judgment as to failure to prevent age

discrimination claim, where underlying age discrimination claim survived summary judgment).

### E.     Wrongful Termination and Wrongful Constructive Termination Claims

Every plaintiff in California alleging wrongful termination in violation of public policy must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108-09 (2007).

Plaintiff bases her wrongful termination claim on her allegations that she was terminated based on race in violation of FEHA and Title VII, that she was terminated in retaliation for her complaints about race discrimination, and that she was terminated in violation of FMLA and the CFRA for taking medical leave. Dkt. No. 1 at ¶¶ 155-58. Because the Court denies the motion to dismiss each of these claims, the claim for wrongful termination in violation of public policy also survives. *See Hubins v. Operating Eng'rs Local Union No. 3*, No. 04-cv-03091 MMC, 2004 WL 2203555 (N.D. Cal. Sept. 29, 2004) (wrongful termination in violation of the public policy expressed in the FMLA and the CFRA claim survived where the underlying claims were not dismissed).

Defendant argues that the Court should dismiss the claim for wrongful constructive termination in violation of public policy because plaintiff has alleged that she was fired and did not resign. Plaintiff argues that she was terminated when she refused to sign the separation and release agreement but that "Plaintiff is also alleging *in the alternative* that if a finder of fact ultimately interprets the facts as reflecting that Plaintiff ultimately resigned before Defendant officially fired Plaintiff, that Plaintiff's 'resignation' was forced and involuntary.'" Dkt. No. 11 at 25 (emphasis added). Because plaintiffs are permitted to plead conflicting theories in the alternative, the Court agrees with plaintiff. Fed. R. Civ. P. 8(a)(3) (a plaintiff must allege "a demand for the relief sought, which may include relief in the alternative or different types of relief."). Alleging that she was fired or in the alternative forced to resign is not a basis to dismiss plaintiff's wrongful constructive discharge claim.

Case No. 13-cv-05983 NC
ORDER DENYING MOTION TO DISMISS
10

Defendant also argues that the claim must be dismissed because plaintiff has not alleged that she suffered "extraordinary and egregious" working conditions. Dkt. No. 8 at 20. The Court finds the question of whether conditions were so egregious as to force plaintiff's resignation to be premature. Plaintiff has alleged that she was subject to racial discrimination over the course of many months. This is sufficient at the pleading stage to allege that she was constructively discharged. *See Nolan v. Cleland*, 686 F.2d 806, 813 (9th Cir. 1982) (finding constructive discharge claim survived summary judgment where plaintiff showed evidence of "numerous adjudicated instances of discrimination."). The motion to dismiss the wrongful termination and wrongful constructive termination claims is therefore denied.

## CONCLUSION

For the reasons explained, the Court denies the motion to dismiss. Defendant must serve its answer to the complaint within fourteen days of this order. Fed. R. Civ. P. 12(a)(4)(a).

IT IS SO ORDERED.

Date: May 16, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge